# Glunt *v.* Pennsylvania Railroad Company, Appellant.

*Negligence—Master and servant—Interstate commerce—Federal Employers' Liability Act—Case for jury—Act of Congress, April 22, 1908, 35 U. S. Stat. 65, c. 149.*

In an action under the Federal Employers' Liability Act of April 22, 1908, c. 149, 35 U. S. Stat. 65, to recover damages for injuries sustained by a railroad employee while engaged in bonding together rails with copper wires, where it appeared that the tracks on which he was working were used in interstate commerce and that a passenger train approaching on another track at a high rate of speed and without warning struck plaintiff and injured him, while he was waiting for a freight train to pass over the track on which he was bonding the rails, the contention that plaintiff was not injured while engaged in interstate commerce was without merit and the case was properly submitted to the jury.

Argued April 20, 1915.  Appeal, No. 173, Jan. T.,

1915, from judgment of C. P. Blair Co., March T., 1915, No. 67, on verdict for plaintiff in case of. Walter F. Glunt v. Pennsylvania Railroad Company. Before Brown, C. J., Potter, Stewart, Moschzisker and Frazer, JJ. Affirmed.

Trespass to recover damages for personal injuries.

The facts appear in the following opinion of Baldrige, P. J., sur defendant's motion for a new trial and for judgment n. o. v.

The plaintiff was employed by the defendant company as a signal repairman. In that capacity he was sent, on the 4th day of December, 1912, to a point just west of Birmingham, where the defendant company maintains and operates three tracks, all used in interstate commerce. The plaintiff was engaged in drilling holes in the ends of the rails, for the purpose of bonding them together, on the north track, known as track No. 3. He was in company of a fellow employee, but without any foreman, the latter having joined the rest of the gang which was working at another point on the defendant company's road. Information had been given the plaintiff by his foreman that the middle track, known as track No. 2, would be used on the day in question for eastbound trains only. Shortly after 10 o'clock in the morning, while plaintiff was engaged in operating his drill, a freight train approached on track No. 3. The plaintiff, upon observing the train began to unfasten his drill from the south rail, to which it was attached. When the drill was released the train was so close to the plaintiff, according to his testimony, that he concluded it would be dangerous to cross over track No. 3, upon which he was working, to the embankment, and, therefore, stepped on track No. 2. While standing on this track, waiting for the freight train to pass, and without receiving any notice or warning, a passenger train, west-bound, running at a high rate of speed, struck plaintiff, and injured him.

This action was brought under the Act of Congress of April 22, 1908, 35 U. S. Stat. 65, c. 149, known as the Federal Employers' Liability Act, which provides that any common carrier shall be liable in damages to any person suffering injury while he is employed by such carrier in interstate commerce......resulting in whole or in part from the negligence of any of the officers, agents or employees of such carrier, or by reason of any defect or insufficiency due to its negligence in its cars, engines, appliances, machinery, tracks, road-bed, etc.

The question of the negligence of the defendant was submitted to the jury, and a verdict was found in favor of the plaintiff.

A motion was made by the defendant company to enter judgment n. o. v., and if that motion was refused that a new trial be granted.

The defendant company contends that it is not liable because—

(1) The plaintiff was not engaged in interstate commerce.

(2) He was not injured while engaged in interstate commerce.

(3) There was an assumption of risk.

The plaintiff was engaged in bonding the rails together with copper wires, in connection with the installation of a new and incomplete automatic electric signal system.

It is contended in support of the first proposition that the plaintiff was not employed on any instrumentality used in interstate commerce. In support of this proposition we are referred to the case of Jackson v. Chicago, Milwaukee & St. Paul Ry. Co., 210 Federal Reporter 495. The plaintiff therein was engaged in the construction of an incompleted tunnel, which was to be used by the defendant company in interstate commerce. The court held that there could be no recovery, as the tunnel was not used in the transporting of interstate commerce.

Also Bravis v. Chicago, Milwaukee & St. Paul Ry. Co., 217 Federal Reporter 234. The plaintiff was engaged in

the construction of a bridge which was some 600 feet distant from the railroad, on a cut-off, which had never been provided with rails or used as a railroad. In an action to recover for injury the court held that the evidence did not sustain the allegation that the plaintiff was injured while engaged in interstate commerce.

It will be noticed that in these two cases no instrumentality nor construction, nor any part thereof, had been or was used or engaged in interstate commerce.

The case at bar differs from the foregoing line of authorities. It is true the signal system at this time was not in operation, but the rail in which the holes were being drilled was part of the roadbed which at the time of the injury was used in interstate commerce. The rail was to be utilized in connection with the new signal system, but it also entered into and formed a part of the roadbed. The fact that ultimately this rail's use was to be enlarged and its efficiency made greater did not deprive it of being used as an instrumentality in interstate commerce at that time.

In the case of Pederson v. Delaware, Lackawanna & Western R. R. Co., 229 U. S. 146, the plaintiff was employed in connection with repairing a bridge used in both interstate and intrastate commerce. While crossing a temporary bridge, used in place of the bridge being repaired, carrying a sack of bolts or rivets to be used in the bridge, he was injured. The court held that the act under discussion would not apply before the track equipment, etc., had become an instrumentality, but work done on an instrumentality during its use makes it applicable. Mr. Justice VANDEVENDER says, "True, a track or bridge may be used in both interstate and intrastate commerce, but when it is so used it is none the less an instrumentality of the former; nor does its double use prevent the employment of those who are engaged in the repair or in keeping it in suitable condition for use from being an employment in interstate commerce."

We are of the opinion that the plaintiff was engaged in work in connection with interstate commerce.

The defendant further contends that even though the plaintiff had been engaged in interstate commerce work; that he was not injured while he was thus engaged; that he had ceased his activities and stepped from the place he was working to another track. This is a too narrow and strained interpretation, and is not borne out by sound reasoning nor judicial authority.

The case of Illinois Central R. R. Co. v. Behrens, cited by defendant, does not support that contention. In that case the plaintiff was a foreman and was injured in a head-on collision at a time when he was handling cars loaded with freight which was wholly intrastate. His engine at the time aided the movement of cars that were not destined for other states; the service he was rendering was in no way connected with interstate commerce.

The plaintiff in the case at bar was interfered with by the movement of an interstate train, and compelled him for the moment to cease his drilling. But he was on the property of the defendant company, at the place where his work was being done, and under the instructions of his employer.

In the case of San Pedro, Los Angeles & Salt Lake R. R. Co. v. Davide, 210 Federal Reporter 870, a section hand had been engaged in interstate commerce during the day. He was engaged in riding on a hand-car furnished by the railroad company for the purpose of returning from his place of work to a camp maintained by the company, and where the employees lived, and also taking the hand-car to a point where it was taken from the tracks. An accident occurred by this hand-car colliding with another one. The court held that the employee was engaged in interstate commerce; that although at the time he was injured he was returning to his place of abode, he had not yet been discharged from his day's work, and was acting under orders of the foreman.

In the case of Lamphere v. Oregon Railroad & Navigation Company, 196 Federal Reporter, 336, a locomotive fireman, employed by a railroad company engaged in interstate commerce, who was ordered to report at a station where he was to be transported to another station to relieve a crew of an interstate commerce train, was struck and killed as he was approaching the station, through the negligence of the servants of the company, and it was held that he was injured while engaged in interstate commerce.

In North Carolina Railroad Company v. Zachery, 232 U. S. 248, a fireman, whose engine had not yet been coupled to the interstate commerce cars, left his engine, crossed the tracks to go to his boarding house and was struck by an interstate train. It was held that he was injured while engaged in interstate commerce. The court said: "It is argued that so far as appears deceased had not previously participated in any movement of interstate freight, and the other cars had not yet been attached to his engine, his employ in interstate commerce was still in futuro. It seems to us, however, that his act in inspecting, oiling, firing and perparing his engine for the trip to Salem were acts performed as a part of interstate commerce, and the circumstances that the interstate freight cars had not yet been coupled up is legally insignificant." Otherwise, if a workman would stop for a moment to observe his work, go a few feet to get a tool, etc., and be injured, he could not recover under the law. This statute will stand no such construction.

The most liberal interpretation given this statute, in so far as our investigation extends, is in the case of Grow v. Oregon Short Line Company, 138 Pac. Repr. 398; the defendant, an interstate carrier, was, as in this case, installing an automatic block signal. An employee was measuring off and locating places to put poles. At quitting time, in company with other employees, the plaintiff got on a tricycle, operated on the track of the defendant company, was run down by a train, moving at a fast rate

of speed, and killed. The court held, in supporting a verdict for the plaintiff, that the deceased was killed while employed in interstate commerce. It will be noted that the block signal system on which the employee had been working was not completed, and was not in use by the defendant in interstate commerce where the deceased man had been working; although this system was in use in carrying on interstate commerce on certain blocks east and west of that point.

The court held in the Pederson case, supra, where the man was killed carrying materials to the place of his work, that there was no merit in the objection that the accident did not occur while the employee was engaged in interstate commerce work.

The facts and authorities point irresistibly to the conclusion that this plaintiff was injured while engaged in interstate commerce as contemplated by the statute.

The defendant contends further that there can be no recovery in this action, as there was an assumption of risk. The work engaged in by the plaintiff was more or less of a hazardous character, as it required him to be upon tracks where trains were passing, and the plaintiff in undertaking to do the work assumed the risks incident to the employment in which he was engaged, but he did not assume dangers resulting from the negligence of others.

The Supreme Court of this State, in the recent case of VanZandt v. Philadelphia, Baltimore & Washington R. R. Co., 248 Pa. 276, held that a railroad company owes a duty to protect and care for its workmen on its tracks. If a railroad fails to exercise and discharge this duty imposed by the law they are liable.

The question of the defendant company's negligence was one of fact, and was submitted, in the case at bar, to the jury for their determination.

In the case of New York, New Haven & Hartford R. R. Co. v. Pontillo, 211 Federal Reporter, 331, relied upon by the defendant, the deceased was a track walker, who

was in a position of safety, but as the train approached he suddenly stepped on the tracks in front of the rapidly moving train. The court held that under that state of facts there could be no recovery.

The facts in this case are entirely dissimilar. It is contended in this action that if the engineer of the approaching train had exercised due care he could have seen the plaintiff and could have given him ample warning of the train's approach. Whether or not the engineer exercised the care that the circumstances required, and whether the foreman was negligent in giving instructions as to the running of trains, were questions for the jury to consider.

After a careful consideration of the argument advanced in support of defendant company's motions we find no reason to disturb the legal position taken at the trial.

Verdict for plaintiff for $6,421.77 and judgment thereon. Defendant appealed.

*Error assigned,* inter alia, was the refusal to enter judgment for the defendant non obstante veredicto.

*Daniel J. Neff* and *J. D. Hicks,* with them *A. J. Riley,* for appellant.

*J. F. Sullivan* and *R. A. Henderson,* for appellee.

PER CURIAM, May 17, 1915:

Pederson v. Delaware, Lackawanna & Western R. R. Co., 229 U. S. 146, is conclusive that this case was for the jury. Nothing is to be found in the assignments of error calling for a retrial of it.

Judgment affirmed.