Weiner *v.* Philadelphia Rapid Transit Co.,
Appellant.

Argued January 5, 1933.   Before FRAZER, C. J., SIMP-
SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Layton M. Schoch,* with him *Bernard J. O'Connell,* for appellant.—The accident resulted solely from the fact that the plaintiff, for his mere convenience, assumed a position which became dangerous because of his heedless backward movement: Corbitt v. Transit Co., 227 Pa. 297; Amoroso v. R. R., 305 Pa. 195; Haven v. Bridge Co., 151 Pa. 620; Tomey v. Rys., 300 Pa. 189; Kilgallen v. Transit Co., 300 Pa. 451.

*Michael A. Foley,* with him *Henry I. Koplin,* for appellee, cited: Fenner v. Traction Co., 202 Pa. 365; McFarland v. Traction Co., 204 Pa. 423; Hastings v. R. R., 272 Pa. 212; Wagner v. Transit Co., 252 Pa. 354; Snyder v. Rys., 88 Pa. Superior Ct. 20; Bardis v. Ry., 267 Pa. 352; Chew v. Transit Co., 90 Pa. Superior Ct. 155.

OPINION BY MR. JUSTICE MAXEY, March 20, 1933:

Appellee obtained judgment in the sum of $3,000 against the appellant in the court below in an action of trespass for personal injuries. The court refused to enter judgment n. o. v. in favor of defendant. Plaintiff at the time of the accident was engaged in distributing the products of Armour & Company. He drove a refrigerator truck in making deliveries to his regular patrons. On June 15, 1931, he was driving east along Wallace Street and stopped to deliver an order at a point slightly east of the northeast corner of Camac and Wallace Streets. The latter was a one-way eastbound thoroughfare intersected by 13th, Camac and 12th Streets, respectively, running north and south. Wallace Street between 13th and 12th Streets was about 25 feet wide and near the center thereof there was a single track trol-

ley line of the appellant. The rails were about 5 feet 2 inches apart. Between either rail and the nearer curb was a distance of some ten feet. Plaintiff's truck was approximately six feet in width. He parked it about one foot from the north curb. This left a space of some three feet between the right side of his truck and the nearer rail. On the right of plaintiff's truck was a door about two feet in width. Through this door he removed goods for delivery. There was no corresponding door on the left side of the truck.

At the time stated plaintiff entered the store of his customer on the north side of Wallace Street at number 1213 and remained there about five minutes. He walked from the store around the front of the truck to the right side, looking to see whether any vehicles were coming toward him from the west. He testified that he saw none, although there was a clear view for a distance from 250 to 300 feet westward along Wallace Street. He opened the door on the right side of the truck and inserted the upper part of his body thereinto so that he might remove the products ordered by the customer whom he had just visited. He remained in that position 25 or 30 seconds and then moved backward from the truck with some goods in his hand. He then came in contact with the side of defendant's trolley car and sustained serious injuries to his right arm at the shoulder.

There was conflicting testimony as to the speed at which the car was operated prior to the accident and the number of signals sounded by the motorman before the accident and as to whether plaintiff at the time of the accident was backing away from the truck or was closing the door. As to the part of the defendant's car with which plaintiff came in contact, it was conceded that it was a part somewhere behind the front platform.

Defendant contended that it was entitled to judgment n. o. v. because (1) there was no sufficient evidence of its negligence; (2) plaintiff's contributory negligence was so obvious that it should have been declared as a matter

of law. The court below held that the questions of defendant's negligence and of plaintiff's contributory negligence were for the jury.

Although plaintiff testified that he was struck before he backed away from the truck and although the rule is that in considering a motion for judgment n. o. v. in favor of defendant the testimony must be read in the light most favorable to the plaintiff, this rule is qualified by this exception, if plaintiff's testimony is in conflict with incontrovertible facts, it must be rejected. See Hawk et ux. v. P. R. R., 307 Pa. 214, 218, 160 A. 862, and Cubitt v. New York Central R. R. Co., 278 Pa. 366, 371, 123 A. 308.

These two facts are incontrovertible:

(1) Plaintiff parked his car on the left (from the driver's point of view) side of the street (on which side the customer was) instead of on the right side. Since this was a one-way street plaintiff was not violating any traffic rule in doing this, but prudence dictated that his truck be parked on the right side as its only door was on its right side. By parking the truck on the left side, plaintiff placed himself in a dangerous position every time he stood by its door and particularly every time he withdrew his head and shoulder from inside the truck. When he was removing from his load the provisions a customer ordered, his mind would naturally be on that duty. This court has repeatedly held that it is negligent for a person to place himself in a position of danger when a position of safety is equally available to him. See Kilgallen v. P. R. T. Co., 300 Pa. 451, 150 A. 746; Amoroso v. B. & O. R. R., 305 Pa. 195, 157 A. 463, and Corbitt v. P. R. T. Co., 227 Pa. 297, 76 A. 16.

(2) While the plaintiff had parked his truck in a position that made it dangerous for him to work on the right side of it (where its only door was) yet there was sufficient room between the truck and the trolley car for him to stand erect there without being struck. There was a space three feet wide between the right side of the truck

and the nearer rail. Allowing for the overhang of the trolley car, there was, as the motorman testified, a clearance of 20 inches between the car and the truck. The trolley car did not leave the track. Therefore, the conclusion is inescapable that plaintiff must have attempted to project his right upper arm or shoulder to a point more than 20 inches outward from the side of his truck without first ascertaining whether or not it was safe for him to do so. He admitted his head was inside the truck 25 or 30 seconds after he had last looked westward and obtained a clear view of the tracks for more than 250 feet. Even at the moderate speed of 15 miles an hour the trolley car would in 25 seconds traverse a distance of over 500 feet. When one alights from the street side of any vehicle, the most elementary sense of caution dictates a careful survey of the situation before he brings any part of his body further out than is necessary for making such a survey. As this court said in Kilgallen v. P. R. T. Co., supra, "Why plaintiff did not observe the approaching car is difficult to conceive unless he was inattentive to his surroundings."

While plaintiff's head was inside the truck 25 or 30 seconds, he did not hear any warning signal sounded by the trolley car. He explained his failure to do so by saying that street noises would have made attempted listening futile. This made it more imperative for him to use his eyes, as soon as his head was outside the truck doorway, to ascertain whether or not a trolley car or other vehicle was near him. His westward view 25 or 30 seconds before the accident did not alone fulfill the duty of due care, as the event proved. While he denied that he stepped back, the fact that there was a clearance of at least 20 inches between the trolley car and the truck indicates that he must either have stepped back or have swung his shoulder around further than was consonant with proper caution at that time and place.

It was clearly the duty of the motorman, when he saw the plaintiff in a position where a twenty-inch backward

movement by him would have brought him to the zone of danger, to take care not to injure the plaintiff. The motorman testified that when he saw plaintiff "half his body was in the truck" and that he "hit the bell, watched him and slowed up." Negligence would have been for the jury if plaintiff had made out a case free from contributory negligence. When the case presented by plaintiff shows that he failed to exercise due care, he, of course, cannot recover. See Adams v. Gardiner, 306 Pa. 576, 585, 160 A. 589. Plaintiff here did not succeed in establishing a prima facie case and therefore there was nothing requiring submission to the jury.